UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT BURMAN and KEVIN MULDER,
*for themselves individually and for*
*those similarly situated*,

        Plaintiffs,               Case No. 1:15-cv-596

v.                                           HON. JANET T. NEFF

EVERKEPT, INC. a/k/a
Everkept Disposal,

        Defendant.
_____/

**OPINION**

Plaintiffs, current and former employees of Defendant Everkept, Inc., filed this proposed collective/class action to recover for injury and damages stemming from alleged violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et. seq.*, and/or the Michigan Workforce Opportunity Wage Act (WOWA), MICH. COMP. LAWS § 480.411 *et. seq.* Plaintiffs claim that Defendant denied them overtime and straight-time compensation to which they were entitled under the FLSA/WOWA, as a result of Defendant's improper pay calculations and/or its practices or policies of failing to pay employees for "all work activities suffered or permitted"[1] (First Amended Complaint (FAC), Dkt 21 at PageID.92).

---

[1] Plaintiffs also assert several other claims, which are not at issue in the present motions.

The threshold issue before the Court is whether Plaintiffs' employment with Defendant is covered by the FLSA, which the parties present as a question of FLSA "jurisdiction."[2] The parties have filed several related motions, which the Court concurrently resolves in this Opinion and Order. After full briefing, the Court finds that oral argument is unnecessary to resolve the matters presented. *See* W.D. Mich. LCivR 7.2(d).

For the reasons that follow, the Court denies Defendant's Motion for Judgment on the Pleadings or for Summary Judgment as to Plaintiffs' FLSA Claims (Dkts 55, 56). The Court grants Plaintiffs' cross-motion for summary judgment (Dkt 59), and denies Plaintiffs' Motion for Leave to File a Second Amended Complaint as moot (Dkt 62). The Court concludes that Defendant's motion is properly denied because Plaintiffs have sufficiently pleaded their claim under the FLSA, and on the record presented, Defendant's employment of Plaintiffs is subject to the FLSA. Because the Court decides the issue of FLSA coverage as a matter of law on undisputed facts, Plaintiffs' motion for summary judgment (partial summary judgment) is appropriately granted.

## I. Facts

Pursuant to this Court's dispositive motion procedures, the parties have stipulated to a Joint Statement of Material Facts (JSMF) for purposes of the motions (Dkt 57). The parties JSMF is well-prepared and comprehensive, and the Court relies on the stipulated facts as cited herein. The parties' provide the following stipulated summary of the case, and facts concerning Defendant's business

---

[2] "[T]he Sixth Circuit has not ruled whether 'FLSA coverage is jurisdictional.'" *Duby v. Shirley May's Place, LLC*, No. 16-11443, 2017 WL 1021062, at *3 (E.D. Mich. Mar. 16, 2017) (quoting *William v. Hooah Sec. Servs., LLC*, 729 F. Supp. 2d 1011, 1013-14 (W.D. Tenn. 2010)). The Court will proceed with the issue as presented by the parties, recognizing that the matter of FLSA coverage "'speaks to the merits'" of Plaintiffs' case rather than the Court's jurisdiction over it. *See id.*

operations and products used in its business (*id.* at PageID.447-454) (record citation and footnotes omitted).

### Introduction

The named Plaintiffs and proposed class members are current and former collection-driver employees of Defendant, Everkept, Inc. (Everkept). Everkept is a Michigan corporation that operates a garbage, recycling, and yard waste collection service in west Michigan.

Upon agreement by the parties and approval of the Court, the parties engaged in a period of Phase I discovery limited to issues surrounding FLSA jurisdiction. Plaintiffs have alleged that jurisdiction exists under the FLSA in this matter as an enterprise engaged in interstate commerce. Defendant challenges this jurisdictional basis and files the instant Motion for Summary Judgment.

### Material Facts Relevant to Everkept's Business Operations

Everkept is a corporation registered in the State of Michigan; Everkept is not registered to do business in any other State. Everkept provides trash collection, recycling collection, and yard-waste collection services to residential and commercial customers. Everkept has a gross volume of sales that is greater than $500,000 annually. Everkept currently employs or has employed during the time periods relevant to this lawsuit approximately 107 employees. Every employee of Everkept has been, and/or continues to be, a resident of the State of Michigan throughout the duration of his or her employment with Everkept. Each member of Everkept's ownership is a Michigan resident.

Currently, Everkept operates its collection business out of a facility at 2412 Port Sheldon, Jenison, MI. Chad Stoub, one of the founders and co-owners of Everkept, explained the purpose of that facility:

> "We run trash – trash trucks, yard waste trucks, and recycle trucks from that facility into the community, and then back to that facility. And that facility is where they are repaired. In addition to that would be the delivery and maintenance of trash carts, recycle carts, and yard waste carts to those customers. And those trucks are also repaired at that facility.
> So I'd say the – the overarching purpose for that facility is to park and repair the service vehicles."

The Jenison facility has been in operation for the entire time relevant to this lawsuit (June 9, 2012–present). Everkept's owner represents that, currently, Everkept employs twelve trash-collection drivers, three recycle-collection drivers,

three yard-waste-collection drivers, and four "swing" drivers who drive a route when the regular driver is unavailable.

During the period relevant to this lawsuit, Everkept also previously operated a trash collection, recycling collection, and yard-waste collection service out of a facility located at 2011 Palmer Dr., Kalamazoo MI. Operations stopped out of the Kalamazoo facility on January 30, 2015. During the time Everkept operated the Kalamazoo facility, Everkept's owner represents that Everkept employed five drivers who operated out of that facility.

Everkept currently operates approximately 30-32 collection vehicles out of its Jenison facility, and runs 19-20 different collection routes daily.

Everkept provides (or has provided) trash collection, recycling collection, and yard-waste collection services to customers in the following counties in Michigan: Kent County, Ottawa County, Ionia County, Allegan County, Van Buren County, and Kalamazoo County. Everkept currently provides trash collection, recycling collection, and yard waste collection services to customers in the following locales or "area of service" in those counties: Grand Rapids, Kentwood, Wyoming, Comstock Park, Walker, Jenison, Grandville, Forest Hills, Ada, Cascade, Holland, Hudsonvil[l]e, Byron Center, Cedar Springs, Rockford, Sparta, Belmont, Zeeland, Wayland, Caledonia, Alto, Cutlerville, and other surrounding areas.

Everkept has never performed trash collection, yard waste collection, or recycling collection services outside the State of Michigan, and Everkept's collection drivers are not required to cross state lines in the performance of their job duties.

In the performance of its trash collection, recycling collection, and yard waste collection operations, Everkept does not bring trash, recyclables, or yard waste back to its facility for processing or final disposal. Instead, all materials collected in the course of its business are released to landfills or facilities operated by third parties. Each of the facilities to which Everkept dumps the collected trash, recyclables, and yard waste is located in the State of Michigan.

### Material Facts Relevant to Products Used by Everkept in its Business

During discovery, Everkept identified products used in the course of its trash, yard waste, and recycling collection business. These products include the following:

<u>Vehicles</u>. Everkept identified approximately 49 vehicles that it owns, which are currently used in its business. The vehicles identified are primarily collection trucks driven by Everkept's employee-drivers and used in its trash, yard-waste, and recycling collection activities. In particular, Mr. Stoub identified approximately 29 vehicles that are "automated side load" collection vehicles owned by Everkept;

4

approximately 3 vehicles that are "front load" collection vehicles owned by Everkept; as well as approximately 1 "rear load" collection vehicle, one potential "box truck," and two "roll off" collection vehicles that are owned by Everkept.

Everkept provided a list of vehicle-specific VIN numbers for all of the vehicles identified. Using those VIN numbers, the U.S. National Highway Traffic Safety Administration identifies that Everkept's vehicles were manufactured in Missouri, Kentucky, Virginia, Ohio, Indiana, Pennsylvania, Texas, Louisiana, and Ontario (Canada). …

<u>Vehicle Components</u>. The tires on Everkept collection vehicles used in its collection business are manufactured by Hankook and Michelin. Hankook has its production facilities in Korea, China, Hungary, Indonesia, and Tennessee. Michelin manufacture[s] truck tires in South Carolina and Nova Scotia (Canada).

Everkept's collection vehicles use NAPA Commercial batteries. The batteries are distributed by NAPA from Maryland. NAPA's corporate office is in Illinois.

Among other companies, Everkept primarily uses truck, engine, and compactor parts produced by Heil Corporation, Cummins Inc., [and] McNeilus Truck and Manufacturing Company. Heil Corporation is a Tennessee corporation, with manufacturing plants in Alabama, Mississippi, South Carolina, and Scotland. Among other products used, Heil is the primary manufacturer of the compactor bodies on Everkept's collection vehicles. Cummins Inc. is an Indiana Corporation. Cummins manufactures engines and engine parts used in Everkept's collection vehicles. McNeilus Truck and Manufacturing Company is a Minnesota Corporation. McNeilus manufactures garbage truck bodies and parts, including hydraulic cylinders, which Everkept uses on its collection vehicles.

Products from Heil and Cummins are distributed to Everkept by Bell Equipment and Stepp Equipment Co., both of which are Illinois corporations.

Vehicle parts relating to the cab of the collection vehicles are produced by Autocar (the manufacturer of the collection vehicles), which is an Indiana corporation. JIT Truck Parts is an Illinois corporation that provides Everkept with Autocar parts for the cabs of the collection vehicles.

Everkept's collection vehicles use fuel and motor oil, which are produced outside of Michigan. The fuel used by the Everkept trucks is purchased from gas and fueling stations located within the State.

Everkept is also a patron of various Michigan-based vendors or businesses that provide vehicle parts or other products used in the course of Everkept's business.

Some of these companies provide products produced outside of Michigan. For example, Everkept uses collection vehicle parts from Fastenal Company and Parker; Fastenal Company is a Minnesota corporation, while Parker Hannifin is an international corporation based in Ohio. Additionally, some of products from Michigan companies may be produced or repurposed in Michigan. When an Everkept truck requires repair to a radiator, D & B Radiator Sales and Service, Inc. repairs or rebuilds the radiator. Other products are not labeled; as a result, their origin is unknown.

<u>Other Products Used In Business</u>. Everkept also uses various products or services in its business, including:

Everkept uses 10 computers in the administration of its business. Dell is the manufacturer of most of those computers, along with an on-site server that Everkept operates. Dell is a Texas corporation. Everkept owns one or more Chromebox computers, which are computers running Google's operating system. Google is a California-based company. Everkept also uses a remote or off-site server, which is administered by Everkept's software company, Core Computing Solutions—a Florida-based company. Everkept also owns and uses computer monitors in its business, which are produced by Asus (a Taiwan-based company) and ViewSonic (a California-based company).

Everkept utilizes or has utilized multiple electronic route management systems in the course of providing collection services; these programs help "to ensure optimized routing" of the collection vehicles while performing collection services. These systems are Trux (produced by Trux Route Management Systems, Inc.—a Canadian corporation), TrashFlow (produced by Ivy Computer, Inc.—a Vermont corporation), and Core (produced by Core Computing Solutions, which again is a Florida corporation). Everkept uses eMaint software to run its computer system in its on-site mechanic shop. E.Maint is produced by E.Maint Enterprises, which is a New Jersey corporation.

Everkept's collection drivers use Galaxy tablets to display the route lists in the collection vehicle to the driver. Galaxy tablets are manufactured by Samsung, which is a South Korean corporation. Everkept again uses software from Core Computing Solutions and Google to show the routes on the Galaxy tablets.

## II. Defendant's Motion to Dismiss

Defendant first moves to dismiss Plaintiffs' FAC under Federal Rule of Civil Procedure 12(c) on the ground that Plaintiffs have failed to sufficiently plead a case under the FLSA.

### A. Legal Standard

A Rule 12(c) motion may be brought "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). The standards applicable to a Rule 12(c) motion are the same as those for Rule 12(b)(6). *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012); *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). The court must take "all well-pleaded material allegations of the pleadings of the opposing party ... as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012).

A well-pleaded complaint must contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether the complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

B.  Sufficiency of the Pleadings

Defendant asserts that Plaintiffs' sole allegation concerning the FLSA interstate commerce requirement is that "Everkept is engaged in interstate commerce and/or is part of an 'enterprise' engaged in interstate commerce ..." (Dkt 56 at PageID.434). Defendant argues that this threadbare sentence is insufficient for the particular claims Plaintiffs seek to advance. Defendant states that Plaintiffs have relied on one failed theory after another to establish Defendant is engaged in

7

interstate commerce, none of which have proved successful. And although Plaintiffs will likely develop some other theory in response to Defendant's motion after discovery, Plaintiffs have not specifically pleaded the basis of their claims as required under the *Twombly/Iqbal* standard. The Court disagrees.

"The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *German Free State of Bavaria v. Toyobo Co, Ltd.,* 480 F. Supp. 2d 958, 963 (W.D. Mich. 2007); *see also Twombly,* 550 U.S. at 555 (citing FED. R. CIV. P. 8(a)(2)). Accordingly, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under a viable legal theory. *Bavaria,* 480 F. Supp. 2d at 963; *see also Lillard v. Shelby Cty. Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir. 1996). Plaintiffs' FAC meets this standard with respect to the FLSA claim.

As Plaintiffs set forth, the FAC adequately alleges a legal and factual basis for FLSA jurisdiction in this case. The Complaint alleges that Everkept is an "enterprise" engaged in interstate commerce or the production of goods for commerce with annual sales of not less than $500,000, and thus is an FLSA-covered employer (Dkt 21, FAC ¶ 19 at PageID.95). The FAC also contains detailed allegations that Plaintiffs and class-Plaintiffs are "residential pick-up drivers" as part of Everkept's garbage, recycling, and yard waste collection business (*id.*, e.g. ¶¶ 8-9, 12-13, 49-50 at PageID.93-94, 101). Further, these employees "operate Everkept's trash collection truck vehicles, make collection stops at residences or businesses with whom Everkept had contracted to pick up garbage, and empty their garbage trucks at a landfill" (*id.* ¶ 22 at PageID.96).

The Complaint describes in detail the two theories by which Everkept has violated the FLSA: First, by improperly calculating employees' pay under Everkept's "hours worked formula" used to

calculate overtime compensation (*id.* ¶¶ 21-38, 62-79 at PageID.96-99, 103-107). And second, by failing to pay employees for work required, suffered, or permitted (*id.* ¶¶ 39-46, 92-102 at PageID.99-100, 109-112). These allegations include specific citations to statutory provisions, administrative regulations, and caselaw authority, as well as documentary evidence attached as exhibits to the FAC.

Plaintiffs have pleaded sufficient "factual content [to allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" in the context presented. *See Iqbal*, 556 U.S. at 678. Common sense dictates that here, as in many cases, a claim advanced under an "enterprise" theory of FLSA coverage will necessarily depend on the employer's business status or internal activities, which may not be specifically known to the plaintiff. Defendant's motion to dismiss under Rule 12(c) is denied. Because the Court finds the pleadings sufficient, Plaintiffs' motion for leave to file a second amended complaint is moot.

## II. Defendant's Motion for Summary Judgment

Defendant moves in the alternative for summary judgment based on the lack of FLSA "jurisdiction."

### A. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson,* 477 U.S. at 248).

"A dispute is genuine if there is evidence 'upon which a reasonable jury could return a verdict in favor of the non-moving party.' A factual dispute is material only if it could affect the outcome of the suit under the governing law." *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 418 (6th Cir. 2015) (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52).

### B. FLSA Jurisdiction/Coverage

The FLSA minimum wage and overtime provisions protect employees through "individual" and "enterprise" coverage. *Duby v. Shirley May's Place, LLC*, No. 16-11443, 2017 WL 1021062, at *3 (E.D. Mich. Mar. 16, 2017) (citing *Kowalski v. Kowalski Heat Treating, Co.*, 920 F. Supp. 799, 802-03 ([N.D. Ohio] 1996); *Usery v. Yates*, 565 F.2d 93, 96 (6th Cir. 1977); 29 U.S.C. §§ 206(a), 207(a)(1)). Plaintiffs are not claiming FLSA jurisdiction under an "individual coverage" theory.

Rather, at issue is whether Plaintiffs can demonstrate the interstate commerce element for "enterprise" coverage so as to bring Plaintiffs' employment within the provisions of the FLSA. The parties' dispute the governing law, and specifically, whether this Court should follow the view of the Eleventh Circuit Court of Appeals in *Polycarpe v. E & S Landscaping Service, Inc.*, 616 F.3d

1217 (11th Cir. 2010). Although the *Polycarpe* decision is not binding on this Court, the Court finds the reasoning of *Polycarpe* persuasive and appropriately controlling in the circumstances of this case. The Court is not persuaded by Defendant's arguments to the contrary. Accordingly, on the undisputed facts, the Court concludes that FLSA coverage exists.

The FLSA covers persons "employed in an enterprise engaged in commerce or in the production of goods for commerce," which is also known as "enterprise coverage" under the Act. *See* 29 U.S.C. §§ 203(s), 206(a), 207(a)(1). Under 29 U.S.C. § 203(s)(1)(A), enterprise coverage under the FLSA consists of two elements. First, the employer's business must have an "annual gross volume of sales made or business done [that] is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii). As noted above, the parties have stipulated that "Everkept has a gross volume of sales that is greater than $500,000 annually." This element is not at issue.

Second, the employer's enterprise must be engaged:

(1) in commerce; or

(2) in the production of goods for commerce; or

(3) have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

29 U.S.C. § 203(s)(1)(A)(i). The term "commerce" means "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Where both the $500,000 threshold and at least one of the commerce elements are met, all employees of the enterprise are entitled to protections of the FLSA, regardless whether each individual employee engages in interstate commerce. *Archie v. Grand Cent. P'ship, Inc.*, 997 F.

Supp. 504, 528 (S.D. N.Y. 1998) (Sotomayor, J.). Plaintiffs assert coverage under the third option—commonly referred to as the "handling" clause.

As Plaintiffs observe, and *Polycarpe* determined, the scope of enterprise coverage under the "handling" clause, was broadened by Congress' amendment of § 203(s) in 1974. *Polycarpe*, 616 F.3d at 1220, 1224. Prior to the 1974 amendments, an "'enterprise engaged in commerce" was defined as "an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling or otherwise working on goods that have been moved in or produced for commerce by any person ….'" *Archie*, 997 F. Supp. at 530 (quoting § 203(s)). In 1974, the FLSA was amended to define "enterprise engaged in commerce" in relevant part as "an enterprise which has employees engaged in commerce or in the production of goods for commerce, *or* employees handling, selling, or otherwise working on goods *or materials* that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i) (emphasis added); *see Archie*, 997 F. Supp. at 529.

The amendment reflects Congress' intent "to extend the coverage of the FLSA to companies that use products that have moved in interstate commerce," *Archie*, 997 F. Supp. at 530, and to expand the number of employers subject to the FLSA, as confirmed by the legislative history of the amendment:

> "The bill also adds the words 'or materials' after the word 'goods' to make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, e.g., the soap used by a laundry ....
>
> Although a few district courts have erroneously construed the 'handling' clause as being inapplicable to employees who handle goods used in their employer's own commercial operations, the only court of appeals to decide this question and the majority of the district courts have held otherwise and the addition of the words 'and materials' [*sic*] will clarify this point."

12

*Polycarpe*, 616 F.3d at 1224 (quoting S. Rep. No. 93–690, at 17 (1974) (internal citations omitted) (footnote omitted)); *see also Archie*, 997 F. Supp. at 529-30 (acknowledging the same and citing cases in which the courts have concluded that "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce").

Examining the amended language of § 203(s) in *Polycarpe*, the Eleventh Circuit defined "materials" under the FLSA as "tools or other articles necessary for doing or making something." *Polycarpe*, 616 F.3d at 1226. Noting that § 203(s) refers disjunctively to "goods *or materials*," the court observed that it is necessary to distinguish "materials" from the Act's use of the term "goods." *Id.* at 1222. The Court ultimately concluded that for purposes of FLSA's handling clause:

> an item will count as "materials" if it accords with the definition of "materials"—tools or other articles necessary for doing or making something—in the context of its use and if the employer has employees "handling, selling, or otherwise working on" the item for the employer's commercial (not just any) purposes.

*Id.* at 1227. Thus, "[w]hether an item counts as "materials" will depend on two things: 1) whether, *in the context of its use*, the item fits within the ordinary definition of "materials" under the FLSA and 2) whether the item is being used commercially in the employer's business. *Id.* at 1225-26.

Applying the applicable definitions and reasoning from *Polycarpe* mandates a conclusion that enterprise coverage exists with respect to Defendant in this case. The stipulated facts following discovery establish that Defendant's business is dependent on the use of materials that have moved in interstate commerce—as cogently set forth by Plaintiffs.

Most prominently, Defendant's business requires collection vehicles. Defendant is a refuse, recycling, and yard waste collection company. Indispensable to its commercial operations are

collection vehicles that can travel into the communities serviced by Defendant and physically collect the designated materials at each customer's home or business. Defendant owns 30-35 collection vehicles to complete these operations. Everkept's vehicles were manufactured in Missouri, Kentucky, Virginia, Ohio, Indiana, Pennsylvania, Texas, Louisiana, and Canada. Without these vehicles, Defendant could not operate a garbage collection business. Defendant's collection drivers use these trucks on a daily basis to fulfill Defendant's business purpose. Thus, Defendant's commercial operation is dependent on the collection vehicles ("materials") that have moved in interstate commerce and are driven ("handled") by Defendant's employees.

The vehicles' components are likewise "materials" critical to Defendant's operations that have moved in commerce. The tires on Everkept vehicles are manufactured by Hankook (production facilities in Korea, China, Hungary, Indonesia, and Tennessee) and Michelin (manufactures truck tires in South Carolina and Canada). Defendant's trucks use NAPA commercial batteries, distributed from Maryland. Vehicle parts relating to the cab of the collection vehicles are produced by Autocar—an Indiana corporation. JIT Truck Parts is an Illinois corporation that provides Everkept with Autocar parts for the cabs of the collection vehicles.

Defendant otherwise uses collection truck, engine, and compactor parts produced by Heil Corp., Cummins Inc., and McNeilus Truck and Manufacturing Co. Among other products used, Heil is the primary manufacturer of the compactor bodies on Defendant's collection vehicles; Heil is a Tennessee corporation, with manufacturing plants in Alabama, Mississippi, South Carolina, and Scotland. Cummins manufactures engines and engine parts used in the collection vehicles; Cummins is an Indiana corporation. McNeilus manufactures garbage truck bodies and parts, including hydraulic cylinders, which Defendant uses on its collection vehicles; McNeilus is a

Minnesota corporation. Products from Heil and Cummins are further distributed to Defendant by Bell Equipment and Stepp Equipment Co., both of which are Illinois corporations. Defendant's vehicles use fuel and motor oil, which are produced outside of Michigan.

In addition to its collection vehicles, Defendant also relies upon technology for its collection operations. Defendant utilizes multiple electronic route management systems in the course of providing collection services; these programs help "to ensure optimized routing" of the vehicles while performing collection services. These systems are Trux (produced by Trux Route Management Systems, Inc.—a Canadian corporation), TrashFlow (produced by Ivy Computer, Inc.—a Vermont corporation), and Core (produced by Core Computing Solutions—a Florida corporation). Defendant also uses eMaint software to run its computer system in its on-site mechanic shop that services and repairs its collection vehicles; eMaint is produced by e.Maint Enterprises, which is a New Jersey corporation. Defendant's collection drivers use Galaxy tablets to display the route lists of customers who must be serviced each day, to the driver in the collection vehicle while he or she completes the collection route. Galaxy tablets are manufactured by Samsung, which is a South Korean corporation.

Defendant also uses 10 computers in the administration of its business, most of which were produced by Dell (a Texas corporation). Defendant uses operating systems from Google (a California corporation), and computer monitors manufactured by Asus (a Taiwan-based company) and ViewSonic (a California-based company). Defendant uses an off-site server that is administered by Core Computing Solutions of Florida.

In light of these facts, it is evident that Defendant's business is dependent upon the use of materials (i.e. "tools or other articles necessary for doing or making something") that have moved

in interstate commerce. Further, because the use of these materials is essential to Defendant's collection operations, a nexus is clearly established between those interstate materials and Defendant's primary commercial function.

Defendant provides no persuasive argument or facts to the contrary. Under the "handling materials" clause of enterprise coverage, it is immaterial that the above products are purchased and/or used in Michigan. Because there is no reasonable dispute that Everkept (1) has at least $500,000 in annual revenue, and (2) has employees who "handle materials" that have been moved in or produced for commerce as part of its commercial operations, enterprise coverage exists in this case. Thus Everkept is an employer subject to the FLSA.

### III. Plaintiffs' Cross-Motion for Summary Judgment

Plaintiffs request that the Court grant summary judgment in favor of Plaintiffs on the issue of FLSA jurisdiction and enter "an order holding that Everkept is subject to the overtime compensation provisions of the FLSA" (Dkt 59 at PageID.1001). As an initial matter, Defendant opposes the Court's consideration of Plaintiffs' cross-motion for summary judgment on procedural grounds (Dkt 60 at PageID.1008-1009). Defendant asserts that there is no procedural basis for such a motion, and it would be unjust to allow it since Plaintiffs failed to raise the motion in accordance with this Court's civil practice guidelines and specific pre-motion conference procedure for dispositive motions.

Defendant also opposes Plaintiffs' cross-motion on the merits. Defendant argues that, as explained in Defendant's briefs, "there is no evidence whatsoever that Defendant routinely, regularly, or recurrently purchased goods or materials from out of state vendors" (Dkt 60 at PageID.1009). "And there is not even evidence that Defendant routinely purchased goods or

materials from local vendors that had been made out of state" (*id.*). Defendant states that "[t]o the contrary, the most concrete evidence strongly suggests that neither scenario was the case" (*id.*, citing Def's Br., Statement of Facts, Dkt 56 at PageID.431-432). Defendant therefore argues Plaintiff's cross-motion should be denied on the merits.

Pursuant to Federal Rule of Civil Procedure 56(f), "[a]fter giving notice and a reasonable time to respond, the court may [] grant summary judgment for a nonmovant." FED. R. CIV. P. 56(f)(1). Similarly, the Court may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." FED. R. CIV. P. 56(f)(3). Having denied Defendant's motion for summary judgment based on the lack of FLSA jurisdiction/coverage in light of the undisputed facts, the Court concludes that Plaintiffs' cross-motion on this issue is properly granted under Rule 56(f).

To the extent Defendant argues that granting Plaintiffs' cross-motion would be unfair because Defendant did not have notice or an opportunity to respond, the Court disagrees. Defendant had ample opportunity to respond to Plaintiffs' cross-motion in its Reply, and did in fact state its opposition to the cross-motion both on procedural grounds and on the merits. Despite Defendant's expressed concerns, Defendant's Reply could not have been constrained by this Court's local page limit rules since Defendant used less than five of the permitted ten pages for a Reply. Further, the facts relied on by Defendant in opposition to the cross-motion are contrary to the stipulated record. Defendant sets forth no valid opposition to Plaintiffs' cross-motion, either procedurally or on the merits.

This case will proceed on the basis that Defendant is subject to enterprise coverage under the FLSA, which the Court concludes is implicit in the denial of Defendant's motion for summary

17

judgment because the material facts are undisputed. The Court thus grants partial summary judgment in favor of Plaintiffs on the issue of FLSA coverage.

### IV.  Conclusion

Defendant's motion to dismiss or for summary judgment is denied. Plaintiffs' cross-motion for summary judgment on the issue of FLSA coverage is granted. Plaintiffs' motion for leave to file a second amended complaint is denied as moot. An Order will enter consistent with this Opinion.


Dated: March 27, 2017                                    /s/ Janet T. Neff
                                                         JANET T. NEFF
                                                         United States District Judge